747 F.2d 838
 Jannie HALL, as Guardian and Guardian Ad Litem for Charles Hall
v.
BOROUGH OF ROSELLE, Elmer M. Ertl, Individually and as Mayor
of the Borough of Roselle, Vincent F. Trolan, Individually
and as Chief of Police of the Borough of Roselle, Michael
Sakala, Individually and as a Police Officer of the Borough
of Roselle, and John Rhodes, Individually and as Police
Office of the Borough of Roselle.
Appeal of BOROUGH OF ROSELLE, Elmer M. Ertl, Vincent F.
Trolan, Michael Sakala, and John Rhodes.
 No. 83-5659.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6)
Sept. 11, 1984.
Decided Nov. 2, 1984.
 
 Elliot A. Lawrence, Methfessel & Werbel, Rahway, N.J., for appellant.
 Andrew E. Ingram, Jr., Ronald Dean Brown, Newark, N.J., for appellee.
 Before SEITZ, BECKER and ROSENN, Circuit Judges.
 ROSENN, Circuit Judge.
 
 
 1
 Congress enacted the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. Sec. 1988 (1982) (the Act) specifically to give the federal courts discretion to award attorney's fees to prevailing parties in the enforcement of civil rights acts passed by Congress since 1866. S.Rep. No. 94-1011, 94th Cong., 2d Sess. 1, reprinted in 1976 U.S.Code Cong. & Ad.News 5908, 5909. Because these civil rights laws depend greatly upon private enforcement, it was thought that fee awards were essential if private citizens were to have a meaningful opportunity to vindicate the important congressional policies contained in the civil rights laws. Id. at 5910. In this civil rights proceeding,[1] the parties settled the underlying action before trial for the sum of $11,000, but in the wake of the settlement left a hotly disputed claim for attorneys' fees. The district court marked down the fees sought by plaintiff's counsel and made a "lodestar"[2] determination by multiplying the number of hours that should have been reasonably expended on the litigation times a reasonable hourly rate. The court then made an upward adjustment. The defendants timely appealed raising two issues: (1) whether any fees should be awarded in light of the excessive claims made by plaintiff's counsel, and (2) whether an upward adjustment of the award is appropriate under the Act because of the contingent nature of counsel's undertaking or because of other circumstances. We reverse in part and remand.
 
 I.
 
 2
 Although no issue is raised concerning the merits of the initial cause of action, a brief statement of the operative facts may be helpful in the resolution of this appeal. At about midnight on August 26, 1980, police officers Rhodes and Sakala of Roselle, New Jersey, were dispatched to the site of a disturbance in the borough. When they arrived, they found a fight in progress between two persons with a large number of spectators milling about. In attempting to ascertain the principal actors in the melee, the officers were referred to a nearby automobile where they found five persons, including Charles Hall and his brother William. The officers requested that the occupants of the car get out but William Hall, a principal suspect in the disorder, refused. Officer Rhodes then forcibly removed him. It appears that in the process, William Hall resisted and assaulted Officer Rhodes. Charles Hall, fifteen years of age, came to his older brother's assistance and also allegedly assaulted Rhodes. Rhodes claimed that he grabbed Charles to restrain him but Charles flipped Rhodes over his (Charles') back, and the fall rendered Rhodes unconscious for a few moments. After regaining consciousness, Rhodes placed Charles under arrest for assault and the two officers removed Charles Hall to police headquarters. Hall claimed that at police headquarters and while he was handcuffed the two officers without provocation assaulted him and fractured his wrist.
 
 
 3
 Pursuant to Roselle Borough's administrative regulations, the Mayor and Municipal Council conducted a hearing on charges that the two officers had assaulted Charles Hall. The Mayor and Council determined that the two officers had engaged in conduct violative of the municipality's rules and regulations and they suspended the officers without pay. The officers duly appealed from this determination to the Civil Service Commission and the Commission's administrative law judge (ALJ) affirmed the action of the municipality. By decision filed May 7, 1982, however, the ALJ extended the period of suspension for Officer Sakala from 90 to 180 days without pay, thereby imposing the same level of punishment that the Council had inflicted upon Officer Rhodes. On August 23, 1982, plaintiff instituted these proceedings in the United States District Court. After depositions and discovery, but before trial, the parties on May 19, 1983, settled plaintiff's claims for compensatory damages. On May 24, 1983, the district court entered an order dismissing the action, including plaintiff's claim for punitive damages.
 
 II.
 
 4
 Upon the conclusion of the settlement, plaintiff's counsel applied for attorneys' fees, pursuant to 42 U.S.C. Sec. 1988.[3] It is undisputed that the plaintiff is a prevailing party within the meaning of the statute. Plaintiff's counsel submitted an affidavit describing their services aggregating 211 hours and requested fees at the rate of $125 per hour amounting to $26,375 and costs.
 
 
 5
 In resisting the application for fees, the attorney for the defendants argued that the case was simple in terms of its facts and law and that it was "basically a simple tort action for assault." He also pointed to specific charges which he urged were unreasonable both in the time and amount claimed. The district court examined the affidavit of services submitted by plaintiff's counsel and concluded that in some instances the hours required for various tasks were more than reasonably necessary, or pertained to matters that did not directly contribute to this case.
 
 
 6
 Applying the guidelines announced by this court in Hughes v. Repko, 578 F.2d 483 (3d Cir.1978), the court reduced the time claimed from 211 hours to 126 hours. Because the attorneys submitted no information with which to evaluate their experience and training, the court turned to the New Jersey Lawyers Diary. It found that Andrew E. Ingram, one of plaintiff's counsel, had been admitted to the bar in 1978 and the other, Ronald D. Brown, a former Assistant United States Attorney, had been admitted in 1976. It fixed a reasonable hourly rate for them in light of the nature of the litigation and their number of years of practice at $80 per hour. The judge thus reached a lodestar of $10,080. He then considered an adjustment of the lodestar and concluded: "In view of the difficulties inherent in this kind of case and the contingent nature of the fee, depending as it must on recovery, I believe it appropriate to add $5,000 to the lodestar figure." He therefore awarded $15,080[4] in fees and costs in the amount of $595.10.
 
 
 7
 In appealing from the award of attorneys' fees, the defendants contend that (1) the fee award, which included a contingency adjustment, was excessive and unsupported by the record, and (2) no counsel fees whatsoever should be awarded because of the overreaching and "outrageous" nature of the claim. Had this simple assault case not enjoyed the benefit of section 1983, defense counsel asserts that, even as a contingency case, the maximum fee allowable under New Jersey Court Rules would have been $3,966.67. The district court observed that "[t]he factual and legal issues in this case were relatively straightforward," and after culling and sifting the affidavit of services, it reduced the number of hours counsel claimed to have reasonably expended to 126 hours. Although the court concluded that the applicants had "undoubtedly" expended the hours claimed by them, "in some instances the hours required for the various tasks were more than reasonably necessary, or were in connection with other proceedings [that] did not directly contribute to this case." We must assume, especially in light of the district court's flat statement that it was applying the Hughes v. Repko guidelines, "[t]he simplicity of the issues involved [is] reflected in the court's determination of the hours reasonably devoted to the successful claim, a determination that must be made in arriving at the lodestar itself." Hughes v. Repko, 578 F.2d at 487.
 
 
 8
 In fixing a reasonable hourly rate of $80 per hour, the district judge took into consideration the experience and years of practice of each of plaintiff's counsel. Before ascending the bench, the judge had practiced law in New Jersey and had been an able and experienced trial lawyer. We can assume his familiarity with the rates of attorney's fees in New Jersey for trial lawyers of comparable experience and ability. See Lindy I, 487 F.2d at 169 ("A judge is presumed knowledgeable as to the fees charged by attorneys in general and as to the quality of legal work presented to him by particular attorneys; these presumptions obviate the need for expert testimony such as might establish the value of services rendered by doctors or engineers."). He reduced the hourly rate claimed from $125.00 to $80.00. A reasonable attorney's fee is one that compensates a lawyer for the fair market value of his time, experience, and effort. "Such a determination can never be reduced to a neat mathematical formula; it involves important matters of judgment." Berger, Court Awarded Attorneys' Fees: What is "Reasonable"?, 126 U.Pa.L.Rev. 281, 316 (1977). Obviously, under the Act a lawyer should be compensated only for such hours as he or she reasonably expended in behalf of the client and at a reasonable hourly rate for the character and quality of the service. The lawyer must not abandon self-restraint or careful billing judgment because of the expectation that the obligation to pay the fee will be statutorily shifted to the losing party. We cannot say on this record that the district court's finding of the number of hours reasonably expended was clearly erroneous or that it abused its discretion in the hourly rate it fixed.
 
 
 9
 The defendants urge, however, that the application for fees was so "outrageously excessive" that the entire application for fees should have been rejected. They not only point to the amicable settlement of the case before trial as evidence of the outrageous demand but to the fee applicants' concession that this "is a very simple case" and that it is one in which "liability is clear, given the two witnesses that we had." Therefore, the defendants assert that the district court should have applied Brown v. Stackler, 460 F.Supp. 446 (N.D.Ill.1978), affirmed, 612 F.2d 1057 (7th Cir.1980), where the trial court rejected the entire claim for fees because of its excessiveness. There, however, the court found that the number of hours claimed to have been spent by plaintiff's attorneys was not only grossly excessive but "simply absurd." The court believed the claim had been exaggerated "probably on the order of eight times" and it therefore concluded that the only proper course "[was] to deny fees altogether." Id. at 447.
 
 
 10
 The line between a reasonable and unreasonable expenditure of time in pursuit of a client's cause is not always clearly evident to counsel, especially in the heat of battle. On the other hand, members of the bar are quasi-officers of the court and they are expected to be careful and scrupulously honest in their representations to the court. They should demonstrate the same level of billing judgment and sensitivity under the Attorney's Fees Award Act as they do with their own private clients. The courts frequently must rely not only upon the accuracy of the record keeping but upon the intellectual honesty of counsel in the allocation of hours worked and in the measurement of time. Lawyers therefore must exercise care, judgment, and ethical sensitivity in the delicate task of billing time and excluding hours that are unnecessary. Such considerations may not be abandoned because fee responsibility is shifted under 42 U.S.C. Sec. 1988. The lawyers in Brown v. Stackler lost their entire claim for fees because of their gross exaggeration. In the instant case, however, the district court did not consider the hours claimed by counsel as grossly exaggerated or absurd. It did not impugn the integrity of counsel. On the contrary, the court found that they had undoubtedly expended the hours claimed but that in some instances they spent more time on various tasks than was reasonably necessary, or time was spent in connection with other proceedings that did not directly contribute to this case. It therefore weighed, cut, and reduced the claim. We cannot say that, under these circumstances, the court abused its discretion in refusing to apply the principle of Brown v. Stackler to the facts of this case.
 
 III.
 
 11
 The district court adjusted the lodestar figure upward by approximately 50% on the following rationale:
 
 
 12
 In view of the difficulties inherent in this kind of case and the contingent nature of the fee, depending as it must on recovery, I believe it is appropriate to add $5,000 to the lodestar figure. None of the other factors suggest to me that there should be any other adjustments to the lodestar in either direction.
 
 
 13
 Apparently, the difficulties the district court had in mind were contained in his earlier statement in the colloquy with counsel that cases such as this "pose a particular difficulty of their own [because] [i]t is just hard to get anybody to take action against a policeman." The defendants contend that nothing in the record provides a basis for the court's speculative conclusion. On the contrary, they point out that the defendant municipality took action against the policemen, two of its councilmen testified against them, and there is no evidence of any "hurdle" plaintiff's counsel had to overcome in successfully pressing this suit. They assert that this was not a complex case but, on the contrary, was basically a simple tort action.[5]
 
 
 14
 Our threshold question is whether an upward adjustment of the lodestar award is appropriate under Sec. 1988, because of the contingent nature of the fee.[6] The Act[7] empowers the court to award a reasonable attorney's fee to the prevailing civil rights litigant. The Act does not speak of any upward adjustment because of the contingent nature of the fee award or for any other reason. Turning to the legislative history for guidance for the appropriate standards governing fee awards, we note approving reference to the standards applied in several cases, including in particular, Johnson v. Georgia Highway Express, 488 F.2d 714 (5th Cir.1974). One of the considerations in fixing a reasonable fee in Johnson v. Georgia Highway Express was "[w]hether the fee is fixed or contingent," 488 F.2d at 718. Another case specifically cited with approval in the legislative history is Stanford Daily v. Zurcher, 64 F.R.D. 680 (N.D.Cal.1974), affirmed, 550 F.2d 464 (9th Cir.1977), reversed on other grounds, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). In Stanford Daily, the district court held that it could increase the lodestar fee award to reflect the contingent nature of the attorney's compensation, at least in part. 64 F.R.D. at 685-86.[8] Thus, we conclude "that Congress authorized district courts to award upward adjustments to compensate for the contingent nature of success, and thus for the risk of nonpayment in a particular case." Blum v. Stenson, --- U.S. at ----, 104 S.Ct. at 1551 (Brennan, J., concurring); cf. Palmer v. Shultz, 594 F.Supp. 433 (D.D.C.1984) (coming to same conclusion after construing similar provision in Title VII context).
 
 
 15
 We now turn to the facts of this case to ascertain the unlikelihood of success and the risk of nonpayment for counsel, "viewed at the time of filing suit." Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 540 F.2d 102, 117 (3d Cir.1976) (Lindy II). "The court may find that the contingency was so slight or the amount found to constitute reasonable compensation for the hours worked was so large a proportion of the total recovery that an increased allowance for the contingent nature of the fee would be minimal." Lindy I, 487 F.2d at 168. Of course, the burden of showing that an upward adjustment is necessary to the determination of a reasonable fee is upon the applicants. Blum v. Stenson, --- U.S. at ----, 104 S.Ct. at 1548.
 
 
 16
 The affidavit in support of the fee award makes no mention of the contingent nature of success in the case. The Borough of Roselle had already conducted police disciplinary hearings by the time these proceedings were instituted and had determined that the two officers violated the borough's rules and regulations. In fact, plaintiff's key witnesses were two of the borough's councilmen. Thus, from the very outset, liability of the defendants was clear and the case involved no novel legal theory or difficult factual questions. In the colloquy with the district court on the award of fees, counsel for plaintiff acknowledged that "liability is clear, given the two witnesses [the two councilmen] that we had .... I agree it is a very simple case." In its bench opinion, the district court also concluded: "The factual and legal issues in this case were relatively straightforward, basically, that Charles Hall was assaulted in a shocking manner without just cause by police officers acting under the color of state law." Thus, it is evident that although there was a civil rights violation, the underlying action was nothing more than a simple, ordinary tort action for assault with liability clear. The defendants' amicable settlement of the case before trial in less than nine months after suit was filed demonstrates that they too regarded the case as clear cut. In retrospect, one can fairly conclude that from the outset the plaintiff had a very strong case and "objectively viewed, the risk that plaintiff['s] counsel would come away empty handed was remote." McMullan v. Thornburgh, 570 F.Supp. 1070, 1076 (E.D.Pa.1983).
 
 
 17
 The district court considered "the difficulties inherent in this kind of case" as another factor in its upward adjustment to the fee award. We need not dwell long upon this consideration because the fee applicants produced no evidence whatsoever to show that this case posed any particular difficulty because two of the defendants were policemen or because the minor plaintiff was black. The Borough's disciplinary proceedings and the willingness of the two councilmen to testify in behalf of the plaintiff demonstrate the contrary. Moreover, the fee applicants' affidavit in support of the fee award makes no reference whatsoever to encountering any difficulties. Thus, the record provides no basis for an upward adjustment of the award on this ground.
 
 IV.
 
 18
 The fee applicants have failed to carry their burden of justifying an upward adjustment of the lodestar. Nor do the reasons given by the district court to support the upward adjustment withstand examination. We therefore conclude that it was legal error to enhance the basic fee award. See Ursic v. Bethlehem Mines, 719 F.2d 670, 674 (3d Cir.1983).
 
 
 19
 Accordingly, the judgment of the district court will be reversed only insofar as it adjusted the lodestar and the case remanded with directions to enter a fee award in the sum of $9,440.00 plus costs.
 
 
 
 [1]
 Plaintiff brought the action pursuant to 42 U.S.C. Secs. 1983 and 1985, and the fourth, fifth, eighth, and fourteenth amendments of the United States Constitution based on an assault on the minor plaintiff
 
 
 [2]
 The "lodestar" in fixing fees is determined by multiplying a reasonable hourly rate for each attorney times the number of hours reasonably expended on the case. See Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161, 167-78 (3d Cir.1973) (Lindy I )
 
 
 [3]
 The Civil Rights Attorney's Fees Awards Act of 1976 amending 42 U.S.C. Sec. 1988 provides in pertinent part: "In any action or proceeding to enforce a provision of [42 U.S.C. Sec. 1983] the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Pub.L. No. 94-559, Sec. 2, 90 Stat. 2641 (1976)
 
 
 [4]
 This amount was later reduced by $640.00 to $14,440.00, in order to exclude eight hours spent in preparing the fee petition. The plaintiff did not cross-appeal the reduction and so the propriety or impropriety of the reduction, see Prandini v. National Tea Co., 585 F.2d 47, 54 (3d Cir.1978), is not before us
 
 
 [5]
 Defense counsel stated: "Everything was laid out. Everything was done. There was no detailed investigation .... This is a simple case in terms of its facts. If it were anything other than an assault, it would not be a 1983 case at all. It would simply be a tort action .... [I]t is basically a simple tort action for assault. That's all we are dealing with here."
 
 
 [6]
 In Blum v. Stenson, --- U.S. ----, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the Court did not "consider whether the risk of not being the prevailing party in a section 1983 case, and therefore not being entitled to an award of attorney's fees from one's adversary, may ever justify an upward fee adjustment." Id. at ---- n. 17, 104 S.Ct. at 1550 n. 17
 
 
 [7]
 See supra note 3
 
 
 [8]
 Although there has been some suggestion that when the award is statutory the assessment of fees is in some degree a "penalty" against the defendant for violating the law, and that an upward contingency adjustment is therefore inappropriate, see Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir.1983), we can discover, in the Act, no basis for this view. The legislative history of the Act makes it clear that the intent of Congress was to provide adequate compensation for attorneys so as to attract competent counsel to act as "private attorneys general." See S.Rep. No. 94-1011, 94th Cong., 2d Sess. 1, reprinted in 1976 U.S.Code Cong. & Ad.News 5908, 5910-13. There is no mention of the fee award constituting a penalty. Furthermore, in cases cited with approval in the legislative history, the addition of a contingency factor was seen, not as a penalty, but rather as a means of providing the appropriate compensation. See Johnson v. Georgia Highway Express, Inc., 488 F.2d at 718 ("[The attorney] should not be penalized for undertaking a case which may 'make new law.' Instead, he should be appropriately compensated for accepting the challenge."); Stanford Daily v. Zurcher, 64 F.R.D. at 685 ("Courts' application of the [contingent fee] doctrine in the aid of 'private attorneys general' helps attract attorneys to the enforcement of important constitutional principles and significant congressional policies which might otherwise go unrepresented."). This approach, as taken in the legislative history, of viewing the award as compensating, not penalizing, supports an upward adjustment, in the appropriate case, based on the contingent character of the action