Paul **DURETT**

v.

**Walter S. COHEN, Individually and in his official capacity as Secretary of the Department of Public Welfare, Commonwealth of Pennsylvania, Jennifer L. Howse, Individually and in her official capacity as Deputy Secretary for Mental Retardation for the Pennsylvania Department of Public Welfare, Commonwealth of Pennsylvania, Patricia C. Sweigert, Individually and in her official capacity as the Administrator of the Bucks County Department of Mental Health-Mental Retardation, Commonwealth of Pennsylvania, Elaine P. Zettick, Carl F. Fonash, and Andrew L. Warren, Individually and in their official capacities as the Bucks County Commissioners, Commonwealth of Pennsylvania.**

Civ. A. No. 83–3855.

United States District Court,
E.D. Pennsylvania.

Aug. 20, 1985.

Stephen F. Gold, Ilene W. Shane, Philadelphia, Pa., for plaintiff.

John G. Knorr, III, Sr. Deputy Atty. Gen., Com. of Pa., Harrisburg, Pa., for defendants.

MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

In this action, plaintiff Paul Durett alleged that the denial of funding for mental retardation services by Pennsylvania and Bucks County constituted a violation of plaintiff's rights under the fourteenth amendment, the Rehabilitation Act of 1973, 29 U.S.C. § 795 (1985 supp.), federal regulations, 45 C.F.R. § 84.51 *et seq.* (1985), and the Pennsylvania Mental Health/Mental Retardation Act, 50 P.S. §§ 4301(a) & (d), 4305(2), 4415(b) (1969). Plaintiff sought injunctive relief prohibiting the Pennsylvania and Bucks County defendants' denial of plaintiff's residential eligibility for state-funded mental retardation services and a declaratory judgment that Pennsylvania's policy and practice concerning residency of mentally retarded individuals was unconstitutional and violative of the above-named statutes. This lawsuit was resolved by a settlement under which New Jersey, a non-party to this action, agreed to fund plaintiff's mental retardation services from February 1, 1984 on and Pennsylvania agreed to pay the major portion of the cost of plaintiff's care for the year 1983. Now pending before the Court is the petition of plaintiff's counsel, Stephen F. Gold, Esquire, and Ilene W. Shane, Esquire, for

attorney's fees under 42 U.S.C. § 1988 and 29 U.S.C. § 794a(b).

The pleadings, affidavits, and evidentiary materials submitted by the parties establish the following facts: The plaintiff, Paul Durett, is a nonambulatory, profoundly mentally retarded man with cerebral palsy characterized by scoliosis and spastic quadriplegia, microcephalia, multiple contractures and associated deformities, and a grand mal seizure disorder. In 1983, the plaintiff at age 37 was diagnosed as having a mental age of 2.5 months, and I.Q. of 10, and as being in need of total physical care. Plaintiff was born on January 27, 1946 in Roselle, New Jersey. In 1957, the Durett family moved to Venezuela because Mr. Durett was transferred there by his employer. The Duretts maintained their New Jersey home and returned to New Jersey for vacations during their stay in Venezuela. Plaintiff lived with his parents until 1961, when they placed plaintiff in Happy Hills, a private residential mental retardation facility in Montgomery County, Pennsylvania. The Duretts chose Happy Hills because they felt it was the only facility in Pennsylvania or New Jersey which could provide the comprehensive care which plaintiff required, and which they could no longer provide at home. After a fire at Happy Hills in 1968, plaintiff was transferred to Pleasant Manor, a residential facility located in Bucks County, Pennsylvania. From 1961 until 1973, the Duretts paid the entire cost of plaintiff's care and maintenance at Happy Hills and Pleasant Manor.

When the plaintiff's father died in 1972, the plaintiff's mother, Mrs. Durett, left Venezuela and moved back to New Jersey. In 1975, Mrs. Durett moved to Nevada, where she lived at the time this action was instituted. In 1973, plaintiff began receiving Social Security Disability and Veterans Assistance benefits, which benefits were used as partial payment for plaintiff's care. The larger portion of the cost of plaintiff's care was paid by the Durett family. The total cost of plaintiff's care for the year 1982 was $27,168.90, of which $5,784.00 was paid from Social Security and Veter-

ans' benefits, and $21,384.90 from the savings of Mrs. Durett.

In January, 1983, Mrs. Durett informed Pleasant Manor that she was no longer financially able to pay for plaintiff's care. She continued to forward plaintiff's benefits check to Pleasant Manor. In March of 1983, Pleasant Manor's Director of Social Services sought funding on behalf of plaintiff from the Bucks County Mental Health-Mental Retardation Program, the Nevada Developmental Disabilities Office, the New Jersey Department of Human Services, and the Pennsylvania Department of Public Welfare (DPW). Plaintiff's family also contacted the New Jersey, Nevada, and Bucks County offices. The New Jersey and Nevada offices denied funding on the ground that neither considered plaintiff a resident of its state. By letter dated May 18, 1983, Pleasant Manor notified Mrs. Durett that it would not keep plaintiff on the approximately $500.00 per month which she was providing. Pleasant Manor allowed Mrs. Durett 60 days from the date of that letter within which to balance her account. By letter dated July 13, 1983, defendant Patricia C. Sweigert, the Administrator of the Bucks County Department of Mental Health-Mental Retardation, notified plaintiff's counsel that plaintiff was ineligible for mental retardation services funding from Bucks County because plaintiff was not a Pennsylvania or a Bucks County resident. This determination was based on a draft regulation providing that for individuals who became incapable of indicating intent before the age of 21, the state of residence is the state in which the parents reside. See *Pennsylvania DPW Mental Retardation Bulletin*, July, 1983 (Exhibit A to plaintiff's motion for summary judgment). In July of 1983, plaintiff's counsel contacted counsel for DPW, Howard Ulan, to request funding for plaintiff's treatment. This request was denied on the ground that plaintiff was not deemed a resident of Pennsylvania.

On August 10, 1983, plaintiff commenced this action against Walter S. Cohen, Secretary of DPW, Jennifer L. Howse, Deputy Secretary for Mental Retardation of the

DPW, Patricia C. Sweigert, Administrator of the Bucks County Department of Mental Health-Mental Retardation, and Elaine P. Zettick, Carl F. Fonash, and Andrew L. Warren, Bucks County Commissioners. Plaintiff alleged, *inter alia*, (1) that because Pennsylvania's residency standard hinged on the mentally retarded individual's ability to articulate a subjective intent to be a resident of the state, it discriminated against plaintiff in the provision of mental retardation services on the basis of handicap in violation of the Rehabilitation Act of 1973, *supra;* (2) that Pennsylvania's practice, which denied individuals in plaintiff's position publicly funded mental retardation services, was a penalty and hence unconstitutional discrimination against those who exercise the right of interstate migration; (3) that Pennsylvania's policy embodied an unjustified irrebuttable presumption in violation of plaintiff's right to due process; (4) that the arbitrary distinction drawn by Pennsylvania in determining the residency of mentally retarded individuals violated the purpose of the Pennsylvania Mental Health-Mental Retardation Act, *supra.* Plaintiff requested relief in the form of a temporary restraining order (TRO) and preliminary and permanent injunction against denying mental retardation eligibility and appropriate services to plaintiff and a declaration of the invalidity of Pennsylvania's residency standard. Plaintiff's request for a TRO was withdrawn when Pleasant Manor agreed to keep plaintiff until a subsequent conference with the Court. At an in-chambers conference on September 6, 1983, Pleasant Manor agreed to keep plaintiff pending judicial resolution of the matter on an expedited basis. Plaintiff filed a motion for summary judgment on November 22, 1983.

Counsel for DPW told plaintiff's counsel on more than one occasion that plaintiff was a resident of New Jersey and/or Nevada and that plaintiff had erred in failing to sue one or both of these states. Between September and mid-December 1983, counsel for DPW requested counsel for plaintiff to join New Jersey and Nevada as co-defendants. Although counsel for plaintiff declined to do so, counsel for plaintiff invited DPW to join those states as third-party defendants, if DPW desired their participation. Counsel for DPW concluded that these states could not be joined under Fed. R.Civ.P. 14, 19, or 20.

On November 7, 1983, defendant Dr. Howse, the Deputy Secretary of DPW, contacted Mr. Eddie Moore, the Director of the Division of Mental Retardation of the New Jersey Department of Human Services. Dr. Howse explained plaintiff's situation to Mr. Moore, and further stated, "The issue of residency of a mentally retarded person and the liability of a state thereafter to assume responsibility for his care is a difficult issue." Dr. Howse requested Mr. Moore's New Jersey office to consider assuming responsibility for plaintiff on the ground that the residence of the parents controlled plaintiff's residence, because plaintiff was incapable of expressing consent. On December 6, 1983, Mr. Moore responded to Dr. Howse, stating that New Jersey would assume the funding of plaintiff's placement at Pleasant Manor if plaintiff's parents could verify their residence in New Jersey during their stay in Venezuela. On January 4, 1984, counsel for plaintiff provided DPW with an appropriate affidavit from Mrs. Durett. By letter dated February 16, 1985, Mr. Moore advised Dr. Howse of DPW that New Jersey would provide funding for plaintiff's care and treatment at Pleasant Manor as of February 1, 1984.

Pleasant Manor, having been apprised of these developments by plaintiff's counsel, continued to insist on reimbursement for plaintiff's care and treatment during 1983 and threatened to oppose any settlement which did not include this reimbursement. DWP began negotiating a settlement with Pleasant Manor for the 1983 costs.

On February 22, 1984, the Court approved the following Stipulation of Settlement:

### SETTLEMENT STIPULATION

WHEREAS Paul Durett instituted action against the defendants for his right

to remain at Pleasant Manor, a privately licensed facility for the mentally retarded in Bucks County and the defendants' refusal to provide reimbursement for his care, treatment and habilitation at Pleasant Manor;

WHEREAS at the request of the Deputy Secretary for Mental Retardation, Department of Public Welfare, the New Jersey Department of Human Services has agreed to pay for Paul Durett's care, treatment and habilitation at Pleasant Manor;

WHEREAS as a result of said agreement by the New Jersey Department of Human Services, Paul Durett will remain at Pleasant Manor and the costs of his care, treatment and habilitation at Pleasant Manor will be paid by the New Jersey Department of Human Services;

NOW THEREFORE, in order to avoid further litigation, the parties hereby agree to settle the above-captioned action without prejudice to the plaintiff or defendants, on the condition that the New Jersey Department of Human Services pays for Paul Durett's care, treatment and habilitation at Pleasant Manor, a privately licensed facility for the mentally retarded in Bucks County, Pennsylvania.

This Court shall retain jurisdiction for the purpose of determining whether plaintiff's counsel are entitled to attorney fees, and, if so, the amount of such entitlement.

By letter dated March 16, 1984, counsel for DPW confirmed with counsel for Pleasant Manor an agreement whereby DPW was to pay $15,000.00 in settlement of Pleasant Manor's claim for reimbursement of 1983 costs.

## ATTORNEYS' FEES

Plaintiff's counsel, Stephen F. Gold, Esquire and Ilene W. Shane, Esquire, request an award of attorneys' fees pursuant to the Civil Rights Act of 1976, 42 U.S.C. § 1988 and the Rehabilitation Act of 1973, 29 U.S.C. § 794a(b). In the original petition,

filed April 6, 1984, Mr. Gold requested a fee measured at the hourly rate of $150.00 for 116.10 hours of work on the case in chief ($17,415.00) and 13.5 hours in the preparation of the fee petition ($2,025.00), a total of $19,440.00. Ms. Shane requested a fee measured at an hourly rate of $100.00 for 136 hours of work on the case in chief ($13,600.00) and 1 hour of work on the fee petition ($100.00), a total of $13,700.00. Thus, the original fee petition requested a lodestar fee of $33,140.00, and costs in the amount of $1,198.00. On July 31, 1984, Mr. Gold filed a supplemental petition for an additional 41 hours of work on discovery and research in connection with the attorneys' fees petition at an hourly rate of $165.00 ($6,765.00), plus an additional $300.00 in costs related to discovery depositions. To the total lodestar figure of $39,-905.00 (Mr. Gold—$26,205.00; Ms. Shane—$13,700.00), plaintiff's counsel have requested the Court to apply a multiplier of 25% to reflect the contingent nature of the litigation, which would increase the fee award to $49,881.25. The defendants do not dispute the reasonableness of the rates or the amount of hours claimed by plaintiff's counsel. The Court finds that the hourly rates of $150.00 for Mr. Gold and $100.00 for Ms. Shane and the hours expended are reasonable. *See Blum v. Stenson*, 465 U.S. 886, ——, 104 S.Ct. 1541, 1543–44, 79 L.Ed.2d 891 (1984). However, the defendants do contend that any award of fees would be inappropriate in this case because the plaintiff is not a "prevailing party" vis a vis the *defendants* within the meaning of section 1988 and 29 U.S.C. § 794a(b). The defendants also oppose the plaintiff's request for a multiplier. The Court has determined that plaintiff is a prevailing party, and under more typical circumstances, plaintiff's counsel would be entitled to receive a reasonable fee for the full amount of hours requested, plus a 25% multiplier for those hours expended on the merits of the case. However, for the reasons discussed below, the Court will award plaintiff's counsel one-fourth of their requested fees on the merits (as augmented by the 25% multiplier) plus the full amount

of fees requested for work in connection with the fee petition (at $150.00 per hour for Mr. Gold), plus the full amount of costs, as illustrated below:

| | Mr. Gold | | | Ms. Shane | | | Costs |
|---|---|---|---|---|---|---|---|
| Merits | ¼ × | $17,415.00 = | $ 4,353.75 | ¼ × | $13,600.00 = | $3,400.00 | $1,198.00 |
| Multiplier of 25% | ¼ × | $ 4,353.75 = | $ 1,088.44 | ¼ × | $ 3,400.00 = | $ 850.00 | |
| Fee petition | 54.5 × $ | 150.00 = | $ 8,175.00 | 1 × $ | 100.00 = | $ 100.00 | $ 300.00 |
| Total | | | $13,617.19 | | | $4,350.00 | $1,498.00 |

■ Section 1988 provides that in civil rights actions, the "Court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." *See also* 29 U.S.C. § 794a(b) (also containing "prevailing party" language). In determining eligibility for attorneys' fees under section 1988, this Court must determine first, whether a plaintiff is a "prevailing party", and second, whether there is a causal connection between the litigation and the relief obtained from the defendant. *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 910 (3d Cir.1985) (citations omitted).

■ The "prevailing party" standard is a "generous formulation" which merely requires a determination of "whether plaintiff has achieved 'some of the benefit sought' by the party bringing the suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 & n. 8, 103 S.Ct. 1933, 1939 & n. 8, 76 L.Ed.2d 40 (1983); *Institutionalized Juveniles*, 758 F.2d at 910 (quoting *NAACP v. Wilmington Medical Center, Inc.*, 689 F.2d 1161, 1167 (3d Cir.1982), *cert. denied*, 460 U.S. 1052, 103 S.Ct. 1499, 75 L.Ed.2d 930 (1983). In *Institutionalized Juveniles*, the Third Circuit explained that this determination calls for a commonsense appraisal of the relief actually obtained by the plaintiff, rather than a determination of the success of the legal theories. 758 F.2d at 911 (citing *Abraham v. Pekarski*, 728 F.2d 167, 175 (3d Cir.1984), *cert. denied*, —— U.S. ——, 104 S.Ct. 3513, 82 L.Ed.2d 822 (1984); *Bagby v. Beal*, 606 F.2d 411, 415 (3d Cir. 1979)) (quotations omitted). This instruction is particularly helpful in cases in which a plaintiff's claims are not resolved through the trial process, such as the present case.

[A] plaintiff is a prevailing party to the extent extrajudicial relief makes legal claims moot. *See Ross v. Horn*, 598 F.2d 1312, 1322 (3d Cir.1979) (plaintiffs were prevailing parties because changes in the law had mooted their claims), *cert. denied*, 448 U.S. 906 [100 S.Ct. 3048, 65 L.Ed.2d 1136] (1980); *see also Doe v. Busbee*, 684 F.2d 1375, 1379 (11th Cir. 1982) ("[A] party may be considered to be 'prevailing' if the litigation successfully terminates by a consent decree, an out-of-court settlement, a voluntary cessation of the unlawful practice of the defendant, or other mooting of the case when the plaintiff has vindicated his right.").... [Furthermore,] a plaintiff is able to prevail based on relief that the plaintiff may have asserted was inadequate during the course of the litigation. *See Wilmington Medical Center*, 689 F.2d at 1168–69. Also, a plaintiff may be a prevailing party even though judgment was actually awarded in favor of the defendant. *See Ross*, 598 F.2d at 1322 ("In assessing who is a prevailing party, we look to the substance of the litigation's outcome", and "refuse to given [sic] conclusive weight to the form of the judgment.")

Finally, plaintiffs will be prevailing parties even though the relief obtained is not identical to the relief they specifically demanded, as long as the relief obtained is of the same general type.

758 F.2d at 911–12 (plaintiffs prevailed in suit against Secretary of DPW and state hospital administrators to the extent legislative enactments addressed plaintiff's concerns). *See also Maher v. Gagne*, 448 U.S.

122, 131, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980) (legislative history supports award of fees under section 1988 in cases terminating by settlement favorable to plaintiff); *Sullivan v. Commonwealth of Pennsylvania Department of Labor,* 663 F.2d 443 (3d Cir.1981) (plaintiff deemed to have prevailed in Title VII lawsuit where suit prodded union to demand arbitration, which proved successful); *cert. denied,* 455 U.S. 1020, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1981); *Morrison v. Ayoob,* 627 F.2d 669 (3d Cir.1980) (plaintiff's "prevailed" where defendants discontinued the conduct which violated plaintiff's rights, and action was dismissed as moot), *cert. denied,* 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981); *Ross v. Horn,* 598 F.2d 1312 (3d Cir.1979) (plaintiffs prevailed when procedures were changed subsequent to the filing of the lawsuit, despite the fact that no judgment or settlement mandated the changes, and despite the fact that judgment was actually entered against the plaintiffs).

■ The second determination required under section 1988 is "whether there is a causal connection between the litigation and the relief obtained from the defendant." 758 F.2d at 910 (citation omitted). Once a court has determined that plaintiff achieved some of the benefit he sought, the question then becomes "whether the plaintiff obtained the relief sought 'as a result of' the civil rights judicial efforts ... or whether these efforts were 'a material factor' in bringing about the events which resulted in the obtaining of the desired relief." *Sullivan,* 663 F.2d at 449, 452. *See also Institutionalized Juveniles,* 758 F.2d at 916 (the action need not be the sole cause, it must merely be a material factor; the "most expansive definition" of causation is to be applied). The sequence of events may furnish evidence of the requisite causal nexus. *Morrison v. Ayoob,* 627 F.2d at 672. Further, fees may be awarded under section 1988 even where the causal nexus between plaintiff's lawsuit and the remedial action is *indirect. See Sullivan, supra* (Title VII lawsuit against employer provoked union to demand arbitration of grievance which obviated plaintiff's need to

obtain judicial relief from employer); *Thomas v. Honeybrook,* 428 F.2d 981 (3d Cir.1970) (because employees' group's suit against union provoked successful actions by unions against employers, counsel for employees' group entitled to fees in latter suits).

■ This case satisfies the first prong of the section 1988 analysis because plaintiff obtained essentially all of the relief he sought, i.e. public funding for his continued placement at Pleasant Manor. The second prong is clearly satisfied with respect to DPW's reimbursement of Pleasant Manor for the bulk of plaintiff's 1983 expenses because plaintiff's suit was a material factor provoking DPW to provide the $15,-000.00 as reimbursement to Pleasant Manor. In addition, the Court finds that plaintiff's lawsuit was a material factor in provoking Dr. Howse of DPW to contact New Jersey's Department of Human Services on plaintiff's behalf, and that Dr. Howse's contact was a material factor in obtaining New Jersey's agreement to provide prospective funding. A mechanical application of the section 1988 analysis, therefore leads to the following conclusions: (1) plaintiff is a prevailing party, (2) plaintiff's lawsuit was a material factor in obtaining the relief because it provoked a chain of events resulting in Pennsylvania's agreement to reimburse Pleasant Manor for the bulk of past due expenses and New Jersey's agreement to provide prospective funding for plaintiff to remain at Pleasant Manor. *See Sullivan, supra* (indirect causation). These two conclusions are factually valid. With respect to the $15,000.00 provided by DPW in settlement of Pleasant Manor's claim for 1983 reimbursement, these facts are sufficient to support an award of counsel fees under section 1988.

■ However, this analysis does not take into account the fact that the prospective relief obtained by plaintiff was provided by a *nonparty* to the lawsuit. This Court is of the opinion that it would be inequitable to require the defendants to pay the entire amount of attorneys' fees

under the circumstances. This inequity becomes clear when we consider that the DPW defendants took a sympathetic role in this litigation and successfully sought funding on plaintiff's behalf from New Jersey. New Jersey's readiness to assume responsibility for plaintiff apparently vindicated Pennsylvania's position that New Jersey, not Pennsylvania, was liable for the cost of plaintiff's care. At any rate, it would be very bad policy indeed to construe the Pennsylvania defendants' good faith efforts to resolve plaintiff's dilemma as an admission on their part that plaintiff's claim for funding from Pennsylvania was valid. In addition, the Court notes that if New Jersey had been joined as a party defendant, the Court could have awarded the full amount of counsel fees requested, and in so doing assessed a significant portion of those fees against New Jersey.

This Court, in exercising the discretion expressly authorized in section 1988, has taken into account these various equitable considerations and has determined that in this case, a reasonable fee award against the party defendants is one-fourth of the fees claimed for hours spent on the merits plus the full amount of fees for hours devoted to the fee petition. *See Annunziato v. The Gan, Inc.*, 744 F.2d 244, 253 (2d Cir.1984) (considerations of justice and policy behind section 1933 may inform court in the exercise of its discretion under section 1988). In *Nadeau v. Helgemoe*, 581 F.2d 275, 281 (1st Cir.1978), the Court held that section 1988 analysis "is not an all or nothing determination. [The court may] reduce an award if the result is found to be jointly attributable to both [plaintiffs and defendants]." *Cf. Morrison v. Fox*, 660 F.2d 87 (3d Cir.1981) (extent to which plaintiff prevailed against each defendant taken into account in allocation of fees among defendants).

Alternatively, this Court's fee award can be justified by viewing the plaintiff as only *partially* successful against the named defendants. *See Institutionalized Juveniles*, 758 F.2d at 918–21 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)) (supporting a reduc-

tion of the fee award based on the degree of plaintiff's success). In *Hensley*, the Supreme Court said that in making a fee determination, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." 461 U.S. at 434, 103 S.Ct. at 1940. This case can be viewed as a partial success case because the plaintiff received only a small portion of the relief which he sought against Pennsylvania, and because the relief obtained from New Jersey was obtained largely through the intervention of Dr. Howse of DPW. The reduction for partial success may be accomplished either by disallowing hours spent on claims which did not succeed or by reducing the lodestar to provide a fee which is reasonable in relation to the results obtained. *Institutionalized Juveniles*, 758 F.2d at 919 (quoting *Hensley*, 103 S.Ct. at 1943). Where, as here, particular hours of work cannot be identified as either wholly successful or wholly unsuccessful, a general reduction of the lodestar is appropriate. *See Institutionalized Juveniles*, 758 F.2d at 920.

■ Although the Court has already indicated its decision to apply a 25% multiplier to the approved fees representing hours spent on the merits of this action, it remains for the Court to state the basis for this decision. *See Hall v. Borough of Roselle*, 747 F.2d 838, 842–43 (3d Cir.1984). The Third Circuit has stated that the plaintiff has the burden of showing that "an upward adjustment is necessary to the determination of a reasonable fee" based on "the likelihood of success and the risk of nonpayment for counsel, 'viewed at the time of filing suit.'" *Id.* (quoting *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir.1976) *(Lindy II)*). As plaintiff's counsel has argued, at the time this action was instituted, there was no precedent supporting plaintiff under either the fourteenth amendment or the statutes relied upon in the complaint. Further, as Dr. Howse stated in 1983 (and plaintiff would have had to agree), "The issue of

**183**

residency of a mentally retarded person and the liability of a state thereafter to assume responsibility for his care and treatment is a difficult issue." In view of the high degree of uncertainty of payment and the complexity of the legal claims involved, and considering the fact that plaintiff's counsel will receive compensation for only one quarter of their time spent on the merits, the Court has concluded that a multiplier of 25% should be applied to the fees awarded for work performed on the merits of this case.

An appropriate order follows.