360

Paul DURETT,
Appellant/Cross-Appellee,

v.

Walter S. COHEN, individually and in his official capacity as Secretary of the Department of Public Welfare, Commonwealth of Pennsylvania; Jennifer L. Howse, individually and in her official capacity as Deputy Secretary for Mental Retardation of the Pennsylvania Department of Public Welfare, Commonwealth of Pennsylvania; Patricia C. Sweigert, individually and in her official capacity as the Administrator of the Bucks County Department of Mental Health-Mental Retardation, Commonwealth of Pennsylvania; Elaine P. Zettick, Carl F. Fonash, and Andrew L. Warren, individually and in their official capacities as the Bucks County Commissioners, Commonwealth of Pennsylvania, Appellees/Cross-Appellants.

Nos. 85–1572, 85–1603 and 85–1613.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
April 28, 1986.

Decided May 13, 1986.

Stephen F. Gold, Philadelphia, Pa., for appellant/cross-appellee.

Leroy S. Zimmerman, Atty. Gen., John G. Knorr, III, Senior Deputy Atty. Gen., Andrew S. Gordon, Senior Deputy Atty. Gen., Allen C. Warshaw, Executive Deputy Atty. Gen., Chief, Litigation Section, Harrisburg, Pa., for Com. appellees/cross-appellants.

Robert O. Baldi, Baldi & Cepparulo, P.C., New Hope, Pa., for Patricia C. Sweigert, Elaine P. Zettick, Carl F. Fonash, and Andrew L. Warren appellees/cross-appellants.

Before SLOVITER and STAPLETON, Circuit Judges, and LONGOBARDI, District Judge.*

**OPINION OF THE COURT**

SLOVITER, Circuit Judge.

I.

In this case, all parties to an action brought under the federal civil rights laws, 42 U.S.C. § 1983, and the Rehabilitation Act, 29 U.S.C. § 795, appeal aspects of the district court's decision to award attorneys' fees.

Paul Durett is a profoundly retarded man with cerebral palsy characterized by several physical disabilities. He has been evaluated as having a mental age of 2.5 months and an I.Q. of ten and is in need of total physical care. Durett cannot form the intent necessary to choose a state of residence.

Durett was born in New Jersey in 1946 and lived there until 1961. In that year, Durett's parents placed him in a private residential mental retardation facility in Montgomery County, Pennsylvania. In 1968, Durett was moved to Pleasant Manor, a facility in Bucks County, Pennsylvania, where he currently resides.

Durett's parents lived in New Jersey until 1957, when they relocated to Venezuela. They stayed in Venezuela until 1972, but maintained their home in New Jersey and returned there on vacations. In 1972, Durett's father died and Durett's mother moved to Nevada, where she now resides.

The Duretts paid for Paul Durett's care exclusively until 1973, when Durett became eligible for Social Security and Benefits Assistance Benefits, which then paid for part of Durett's care. Mrs. Durett continued to pay for the major portion of Durett's needs until January 1983, when she notified Pleasant Manor that she could no longer afford Durett's care. The authorities in Nevada, New Jersey and Bucks County, Pennsylvania all denied funds for Durett on the ground that he was not a resident of their state.

Durett filed this action against officials of the Pennsylvania Department of Public Welfare (DPW) and of the Bucks County Department of Mental Health-Mental Retardation (Bucks County), alleging that Pennsylvania's regulation that provided that persons who became incapable of forming an intent before the age of 21 were residents of the state in which their parents resided violated the Rehabilitation Act of 1973 and discriminated against persons who exercise their right to interstate travel. The complaint also claimed that the Pennsylvania rule established an irrebuttable presumption in violation of the due process clause and violated the Pennsylvania Mental Health/Mental Retardation Act, 50 Pa.Stat.Ann. § 4101–4704 (1969).

Throughout the litigation, counsel for DPW took the position that Durett should join New Jersey or Nevada, which Durett's counsel declined to do, although they urged the defendants to file a third-party complaint against the absent states. Counsel for DPW apparently concluded that such joinder was not possible under the Federal Rules of Civil Procedure.

In the meantime, DPW officials requested their counterparts in New Jersey to take responsibility for Durett's care. Ultimately, New Jersey agreed to fund Durett's care at Pleasant Manor as of February 1, 1984 after determining that Durett's parents maintained their residence in New Jersey during their stay in Venezuela. After additional negotiations, the Pennsylvania DPW agreed to reimburse Pleasant Manor $15,000 for Durett's care in 1983, while the litigation was proceeding. This effectively ended the litigation on the merits.

Thereafter, Durett's counsel, Stephen F. Gold and Ilene W. Shane, filed a fee petition under 42 U.S.C. § 1988 and the attorneys' fees provision of the Rehabilitation Act of 1973, 29 U.S.C. § 794a(b). Gold

* Hon. Joseph J. Longobardi, United States District Court for the District of Delaware, sitting by designation.

requested compensation for 116.10 hours at $150 an hour for work on the merits, and for 13.5 hours at $150 an hour and 41 hours at $165 an hour for work on the fee petition. Shane petitioned for 136 hours at $100.00 for work on the merits and one hour at $100.00 for work on the fee petition. Gold's request was for $26,205 and Shane's was for $13,700 for a total lodestar (hours multiplied by rate) of $39,905. They requested that the district court add a multiplier of .25 to compensate them for the contingent nature of the litigation. Gold also requested reimbursement for costs of $1,498.

The district court found that Gold's claimed rate of $150 and Shane's of $100.00 were reasonable. *Durett v. Cohen,* 618 F.Supp. 175, 179 (E.D.Pa.1985). The court further determined that Durett was a prevailing party within the meaning of the attorneys' fees provision of the Civil Rights Act and that the litigation had a causal connection to the relief obtained. *Id.* at 180–81. Thus, under the tests developed by this court, the plaintiff was entitled to a reasonable attorneys' fee.

The district court reduced the fee award by 75%, awarding counsel 25% of the amount claimed on the merits, because Durett had received the relief sought largely from a nonparty to the lawsuit, the State of New Jersey, and because Pennsylvania had taken a "sympathetic role" toward plaintiff's claims. The court stated that if plaintiff's counsel had joined New Jersey to the suit, the court could have awarded the entire amount of fees. The court did, however, award the full amount claimed on the fee petition and for costs.

The district court then awarded a multiplier of 25%, "[i]n view of the high degree of uncertainty of payment and the complexity of the legal claims involved, and considering the fact that plaintiff will receive compensation for only one quarter of the time spent on the merits." Thus, the court

multiplied the original amount claimed on the merits by .25 for the multiplier, and then, in line with its earlier ruling, reduced that amount by 75%.

These calculations resulted in an award to Gold of $13,617.19, consisting of $4,353.75 on the merits, $1,088.44 as the multiplier fee, and $8,175.00 on the fee petition. Shane was awarded $3,400.00 on the merits, $850 as the multiplier fee, and $100 on the fee petition for a total of $4,350. Costs of $1,498 were also awarded.

Gold and Shane argue that inasmuch as they obtained all the relief sought in the suit, the district court abused its discretion by reducing the fee award. The DPW defendants argue that the district court erred in awarding a multiplier and in not reducing the amount awarded on the fee petition. The Bucks County defendants claim that because Durett did not prevail against them, they should not be the subject of a fee award.

## II.

■ In determining whether to award attorneys' fee under 42 U.S.C. § 1988,[1] the district court must decide whether a plaintiff is a "prevailing party", and, if so, whether plaintiff has shown a causal connection between the litigation and the relief obtained from the defendant. *See Durett,* 618 F.Supp. at 180 (citing *Institutionalized Juveniles v. Secretary of Public Welfare,* 758 F.2d 897, 910 (3d Cir.1985)). A plaintiff prevails if s/he achieves "some of the benefit sought" in the suit. *Institutionalized Juveniles,* 758 F.2d at 910. The district court held that this test was satisfied because Durett "obtained essentially all of the relief he sought, *i.e.,* public funding for his continued placement at Pleasant Manor," 618 F.Supp. at 181, and that his action bore a causal relationship to the relief obtained. *Id.*

■ Durett claims that the court abused its discretion in deciding the amount of the

---

1. Durett brought suit under 42 U.S.C. § 1983 and the Rehabilitation Act of 1973. Both contain provisions that allow the court to award attorneys' fees to a "prevailing party," and our

case law defining "prevailing party" for purposes of 42 U.S.C. § 1988 is controlling. *See Disabled in Action of Pennsylvania v. Pierce,* 789 F.2d 1016 (3d Cir.1986).

fee by relying on the fact that Durett had obtained the majority of his relief from New Jersey, a nonparty to the lawsuit. Although we might not have reduced the plaintiff's fee award to the same extent if faced with the question in the first instance,[2] we are unable to hold that the district court's exercise of its discretion in this manner was an abuse. First, the district court did not rely on the fact that payment for Durett's care came from New Jersey. The court also referred to Pennsylvania's "sympathetic" attitude toward the plaintiff's position in the litigation, and to the fact that Pennsylvania's position in the litigation, *i.e.*, that it was not responsible for Durett's care, was ultimately vindicated. Durett has not suggested that these are unacceptable grounds for the district court's decision.

Second, Congress' broad grant of discretion to the district court allows it to take into account equitable considerations. *See Annunziato v. The Gan, Inc.*, 744 F.2d 244, 247, 253–54 (2d Cir.1984). Here, the district court concluded that it would be inequitable to assess the full amount of fees requested against a defendant who did not actively contest the litigation and whose position that it was not responsible for Durett's care had been vindicated in large part. This decision does not conflict with the policy of encouraging civil rights plaintiffs to bring actions to vindicate their constitutional rights, which underpins the attorneys' fees statute. For these reasons, we affirm the district court's order insofar as it reduced the plaintiff's fee award on the merits.

The DPW defendants argue that the district court abused its discretion by failing to reduce the amount awarded to Durett for time spent preparing the fee petition. In *Institutionalized Juveniles*, we stated that compensation should be allowed "for time spent on the fee application and *successful* fee appeals." 758 F.2d at 924 (emphasis in original) (quoting *Prandini v.*

*National Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1978)). In that case we held that the district court did not abuse its discretion in reducing the award for fee petition work because the plaintiffs had not been completely successful in their fee petition. We explained that the rationale of *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), which was intended to insure the award of a reasonable fee in light of the results obtained, applied equally to fees generated in the litigation of a fee petition.

■ In this case, although the district court substantially reduced the fees claimed for work on the merits, it failed to apply the *Hensley* rationale in ruling on the award of fees for fee petition work. While we do not suggest that the fee petition work must always be reduced by a percentage corresponding to the reduction of the fees for work on the merits, *Institutionalized Juveniles* suggests that in the ordinary circumstances some reduction is appropriate. We leave open the possibility that in unusual circumstances it would be equitable not to make any such reduction. Here, however, the district court gave no explanation for the seemingly inconsistent result of reducing the fees for work on the merits but granting the entire fee claimed for work on the fee petition. Accordingly, we will remand so that the district court can reconsider the fee award for work on the fee petition in light of *Institutionalized Juveniles*.

■ The DPW defendants also claim that the district court erred in awarding a multiplier of .25 because of "the high degree of uncertainty of payment and the complexity of the legal claims involved, and considering the fact that plaintiff's counsel will receive compensation for only one quarter of their time spent on the merits." 618 F.Supp. at 183. In *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 1548–49, 79

---

**2.** It is not clear on this record that Durett could have obtained jurisdiction over the State of New Jersey, even if counsel had attempted to bring that state into the suit as a defendant. Because

Durett has not argued that the improbability of adding New Jersey to the suit is a reason to hold that the district court abused its discretion, we do not address this argument.

L.Ed.2d 891 (1984), the Supreme Court held that the "complexity of the legal claims" is an inappropriate ground on which to award a multiplier, reasoning that the complexity of the issues is reflected in the number of billable hours or in the reasonableness of the hourly rates. *Id.* Thus, this ground cannot properly support the district court's imposition of a multiplier, and we must remand the case back to that court so that it can determine whether it would award the same multiplier on the basis of permissible considerations.[3]

In awarding the attorney's fee, the district court did not distinguish between the DPW defendants and the Bucks County defendants, and the order merely lists the individual defendants and orders them to pay the fees. Pleasant Manor, where Durett resides, is in Bucks County and, apparently the Bucks County defendants were named in the suit because the Bucks County defendants administer DPW funds in Bucks County. Thus, Bucks County authorities made the initial determination that Durett was not a resident of Pennsylvania. The Bucks County defendants argue, with some persuasion, that they were not prevailed against in any respect and, therefore, they should not be the subject of a fee award.

We are unable to discern whether the district court included them in its order inadvertently or whether the district court has some basis, not articulated in this record, under which such an award could be sustained.[4] On remand, the district court can reconsider whether attorneys' fees should be assessed against the Bucks County defendants. If it determines that such an award is appropriate, it should articulate its reasons so that we can perform our review function.[5]

### III.

For the foregoing reasons, we will affirm the district court's order awarding counsel Stephen Gold $4,353.75 and Ilene Shane $3,400.00 for their work on the merits of the litigation. We will vacate the remainder of the order so that the district court can determine the appropriate reduction of the fee award to Gold and Shane for work on the fee petition, and can reconsider the amount of the multiplier, if any, and the award of fees against the Bucks County defendants.

---

**3.** The *Blum* Court reserved the question whether "the contingent nature of the litigation" justified a fee award multiplier. *See id.* at 1550 n. 17. This court has held, however, that this is a proper basis for a multiplier. *See Hall v. Borough of Roselle,* 747 F.2d 838, 842–43 (3d Cir. 1984). Some additional insight on this issue may be given when the Supreme Court decides another case from this court, *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania,* 762 F.2d 272 (3d Cir.), *cert. granted,* —— U.S. ——, 106 S.Ct. 57, 88 L.Ed.2d 46 (1985), in which a multiplier was also awarded.

The third ground relied upon by the district court to support the multiplier, the fact that plaintiff's award had been reduced by 75%, is not barred by any Supreme Court case, but raises different concerns. As the Commonwealth's brief points out, it appears illogical for the court to increase plaintiff's attorneys' fees just because the court saw fit to reduce the total award. The award of any multiplier should be reconsidered on remand.

**4.** The Supreme Court has recently held that fee awards may not be assessed against defendants as to whom the plaintiff did not prevail. *See*

*Kentucky v. Graham,* —— U.S. ——, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). We leave it to the district court to determine in the first instance whether *Graham,* which was decided on markedly different facts, would bar an assessment of fees against the Bucks County defendants.

**5.** The Bucks County defendants also claim that Durett prevailed against them, if at all, only on the pendent claim he brought under the Pennsylvania Mental Health-Mental Retardation Act and that, therefore, attorneys' fees under the federal attorneys' fees acts could not be awarded. We need not reach the court's power to do so, because the argument that relief came as a result of the state claims is not supported by the record. The plaintiff's complaint was overwhelmingly based on federal law. We would be hesitant to find that the plaintiff's relief came as a vindication of state-law rights merely because the settlement which ended the litigation on the merits did not identify the source of the relief obtained.