**BLACK GRIEVANCE COMMITTEE, Ulysses Miles, Alfred Murray, Henri P. Freeland, Robert Parrish, Joanne Bond, George Wright, William Hand, Calvin Brown, on behalf of themselves and all others similarly situated, Appellees in 85–1561, Cross-Appellants in 85–1562,**

**Willie Robinson and Willie Blackshear, Intervenor-Plaintiffs,**

**Alfred L. Trappanese, Sr., Andrew Gavin, and Philip Caranci, Intervenor-Plaintiffs,**

v.

**PHILADELPHIA ELECTRIC COMPANY, Appellant in 85–1561, Cross-Appellee in 85–1562.**

Nos. 85–1561, 85–1562.

United States Court of Appeals, Third Circuit.

Argued June 3, 1986.

Decided Sept. 22, 1986.

Alice W. Ballard, Jean R. Sternlight, Herbert B. Newberg, (argued), Earl W. Trent, Jr., Philadelphia, Pa., Phillip S. Fuoco, Haddonfield, N.J., for appellees and cross-appellants Black Grievance Committee.

Robert W. Maris (argued), John F. Smith, III, Alexandra D. Sandler, Hope A. Comisky, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., for appellant and cross-appellee Philadelphia Elec. Co.

Before GIBBONS, BECKER, and STAPLETON, Circuit Judges.

GIBBONS, Circuit Judge:

This appeal involves a dispute over attorneys' fees that arose after an employment discrimination class action was settled. The settlement did not deal with the attorneys' fees issue, and following a hearing on the plaintiffs' fee petition the district court ordered the defendant to pay $475,938.18 in attorneys' fees and costs. 615 F.Supp. 1069. Defendant appealed and plaintiffs cross-appealed. We will vacate the fees and costs awards and remand for further consideration.

## I.

The underlying action asserted claims under section 16 of the Civil Rights Act of 1870 (codified as amended at 42 U.S.C. § 1981 (1982)), and was originally filed by the Black Grievance Committee (BGC) and seven individual employees in November of 1975. In 1976 the complaint was amended to add claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17 (1982). Subsequently, in 1978, a company-wide class of employees was certified, and after various pretrial conferences and extended periods of discovery, trial was finally set for July of 1983. BGC's basic theory for its claims was that the defendant, Philadelphia Electric Company (PECO) had engaged in company-wide racial discrimination in hiring, assigning, testing, promoting, and terminating black employees. Just prior to the commencement of trial, however, the parties agreed to settle the suit. Notice of settlement was given to the class and, after the court approved the settlement in the form of a consent decree, the decree was signed on January 3, 1985.

The consent decree reserved the issue of reasonable attorneys' fees and, after BGC and PECO were unable to settle the fee issue, BGC filed a fee petition. This petition sought a lodestar of $537,499.00, increased by a multiplier of 2.75 to 3.0 and costs totaling $20,024.07. PECO responded by conceding that BGC was the "prevailing party," but it challenged certain hours and the hourly fees used to calculate the lodestar. On August 13, 1985 the district court ordered PECO to pay plaintiffs' counsel attorneys' fees of $424,535.25. This award consisted of a lodestar of $283,023.50 adjusted by a 25% delay enhancer, a 50% contingency enhancer, and a 25% result-obtained reducer. The district court also awarded plaintiffs' attorneys $7,672.50 for the time spent in preparing the fee petition and $43,730.43 in costs.

## II.

The Civil Rights Attorneys' Fees Awards Act of 1976 and the attorney's fee provision contained in Title VII of the Civil Rights Act of 1964 provide that in federal civil rights actions "the court, in its discre-

tion, may allow the prevailing party … a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988 (1982); 42 U.S.C. § 2000e–5(k) (1982).[1] A reasonable attorneys' fee is "one that is 'adequate to attract competent counsel, but … [that does] not produce windfalls to attorneys.'" *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984) (quoting S.Rep. No. 94–1011, 94th Cong., 2d Sess. 6, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5908, 5913). The basic fee, therefore, is usually "calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum,* 465 U.S. at 888, 104 S.Ct. at 1543; *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). Because each litigation involves unique factors, however, the basic fee (known as the lodestar) may be adjusted upward or downward based on such factors as the result obtained. *See Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939; *see also City of Riverside v. Rivera,* — U.S. ——, 106 S.Ct. 2686, 2691, 91 L.Ed.2d 466 (1986) (plurality opinion).

█ While both the Supreme Court and this court have pointed to various factors and attempted to explain how a fee should be calculated, the determination is primarily a matter committed to the discretion of the district court. *See Blum,* 465 U.S. at 896–97, 104 S.Ct. at 1547–48; *Hensley,* 461 U.S. at 436–37, 103 S.Ct. at 1941; *Institutionalized Juveniles v. Secretary of Public Welfare,* 758 F.2d 897, 919, 921–22 (3d Cir.1985). As this court has explained,

an award of reasonable attorneys' fees is within the district court's discretion…. Thus our standard of review is a narrow one. We can find an abuse of discretion if no reasonable [person] would adopt the district court's view…. We may also find an abuse of discretion when the trial court uses improper standards or proce-

dures in determining fees, or if it does not properly identify the criteria used for such determination. Factual findings, of course, are subject to the clearly erroneous standard of review.

*Silberman v. Bogle,* 683 F.2d 62, 64–65 (3d Cir.1982) (citations omitted).

### III.

Between them PECO and BGC raise ten challenges to the district court's attorneys' fees and cost awards. Two challenges raised by BGC relate to the calculation of the lodestar, an additional challenge by BGC plus four challenges raised by PECO relate to the adjustments that were made to the lodestar, while the remaining three challenges (one raised by BGC and two raised by PECO) concern the award for costs and the award for the expense incurred in preparing the fee petition. Because various calculations affect other calculations we will first review the challenges to the lodestar calculation, we will then consider the challenges to the adjustment of the lodestar, and finally we will review the costs and fee petition awards.

### 1. *The Billing Rate for BGC's Attorney*

In their cross-appeal, the attorneys for BGC challenge the district court's reduction of some of their hourly rates. Attorneys Herbert Newberg, Alice Ballard, and Earl Trent each set forth their historic hourly rate in affidavits attached to the fee petition.[2] PECO did not challenge, and the district court did not reduce, Newberg's rate for the period from September of 1975 to December of 1981 or Ballard's rate for the period from January of 1979 to October of 1980. However, for the period thereafter PECO asserted that Newberg's rate should have been limited to $175 per hour and that Ballard's rate should have been

---

1. The standards applicable to determining what constitutes reasonable attorneys' fees are the same under both § 1988 and Title VII. *See Hensley v. Eckerhart,* 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40 (1983).

2. BGC's counsel also challenges the district court's reduction of the billing rate of Philip Fuoco for the year 1985. Because the hours for which Fuoco was billing in 1985 relate to the fee petition, Fuoco's rate reduction will be discussed in subsection III, 10.

limited to $90 per hour. In addition PECO contended that the market rate for an attorney of Trent's experience was at best $90 per hour.

PECO based its contention concerning the reduction in the rates for Newberg and Ballard on the fact that the $175 and $90 rates were the rates that had been awarded to Newberg and Ballard in prior civil rights fee disputes. *See Institutionalized Juveniles v. Secretary of Public Welfare*, 568 F.Supp. 1020, 1034 (E.D.Pa.1983), *aff'd in part and vacated in part*, 758 F.2d 897 (3d Cir.1985) (dealing with Newberg); *Kuhn v. Philadelphia Electric Co.*, Civil Action No. 77–1107 (E.D.Pa. Jan. 20, 1982) (fee order) (dealing with both Newberg and Ballard). Relying on these prior cases, the district court found that those fee awards established Newberg's and Ballard's marketplace billing rates for the period of time discussed in those decisions (through 1982 for Ballard and through 1983 for Newberg). Thus the court reduced Newberg's hourly rate for the period of January 1982 to December of 1983 from $200 to $175. Similarly, the court reduced Ballard's hourly rate for the period from October of 1980 to December of 1982 from $115 to $90. Having reduced Newberg's and Ballard's rate from 1980 through 1983, the district court went on to find that there was "insufficient evidence" to support the post–1982 and post–1983 rates claimed by Ballard and Newberg. The court, therefore, reduced both Newberg's and Ballard's claimed billing rates to rates it felt were "fair and reasonable." With regard to Trent, the court found that he was less experienced than Alice Ballard, and consequently the court concluded that $90 per hour was a reasonable rate for all the hours Trent had worked.

█ The reasonable value of an attorney's time is the price that time normally commands in the marketplace, which is generally reflected in the attorney's normal billing rate. *See In re Fine Paper Antitrust Litigation*, 751 F.2d 562, 590–91 (3d Cir.1984); *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sani-*

*tary Corp.*, 487 F.2d 161, 167 (3d Cir.1973) (*Lindy I*). The question of an attorney's marketplace billing rate, therefore, is a factual question which is subject to a clearly erroneous standard of review. *See In re Fine Paper*, 751 F.2d at 591.

█ The hourly billing rate used in calculating the fees in *Institutionalized Juveniles* and *Kuhn* establish a factual basis for Newberg's and Ballard's marketplace rates. Accordingly, the district court's reduction of Newberg's rates between 1981 and 1983 and the reduction of Ballard's rates between 1980 and 1982 are not clearly erroneous. However there is no factual support in the record for the reductions after 1982 and 1983. PECO contended that the rates used in *Institutionalized Juveniles* and *Kuhn* represented the maximum rate because inflation slowed in 1984 and 1985. The district court did not accept PECO's argument, but it also did not accept the uncontradicted rates set forth in Newberg's and Ballard's affidavits. Instead, it appears the court felt that because it had reduced the rates for 1980–82 and 1981–83, it should also reduce the claimed rates for 1984–85. The rate reductions for 1984–85 have no support in the record. The historic billing rates set forth in their uncontested affidavits establish marketplace rate. Thus, except for the periods discussed in *Institutionalized Juveniles* and *Kuhn* the district court should have accepted the rates in Newberg's and Ballard's affidavits. Moreover, there was no factual basis for reducing the rates set forth in Trent's affidavit. Attorneys are not fungible. Trent's experience relative to Ballard's experience was not determinative of his billing rate; rather the question is what rate Trent commanded in the marketplace. Ballard's affidavit asserts that the rates she charged for her services in relevant periods are consistent with rates charged by comparable practitioners in the Philadelphia legal community for work of similar nature. The rates sought by Trent are for the most part lower. PECO filed no affidavit and offered no testimony contesting the accuracy of Ballard's statement

with respect to charges by comparable practitioners. Thus the uncontradicted affidavits were never put in issue, and the district court was not on this record free to disregard them.

Because the district court erred in reducing undisputed hourly rates we will reverse and direct the district court to recalculate the lodestar using the rates set forth in the uncontested affidavits. The following chart summarizes the rates to be used:

*Newberg*

| Time | Rate Claimed | Rate Used by District Court | Rate to be Used on Remand |
|---|---|---|---|
| 9/75 to 8/78 | $135/hr | $135/hr | $135/hr |
| 9/78 to 8/80 | $150 | $150 | $150 |
| 9/80 to 12/81 | $175 | $175 | $175 |
| 1/82 to 12/83 | $200 | $175 | $175 |
| 1/84 to 8/85 | $225 | $190 | $225 |

*Ballard*

| Time | Rate Claimed | Rate Used by District Court | Rate to be Used on Remand |
|---|---|---|---|
| 1/79 to 10/80 | $ 90/hr | $ 90/hr | $ 90/hr |
| 10/80 to 12/82 | $115 | $ 90 | $ 90 |
| 1/83 to 12/83 | $125 | $100 | $125 |
| 1/84 to 7/84 | $125 | $115 | $125 |
| 8/84 to 8/85 | $150 | $125 | $150 |

*Trent*

| Time | Rate Claimed | Rate Used by District Court | Rate to be Used on Remand |
|---|---|---|---|
| 1979–80 | $100/hr | $ 90/hr | $100/hr |
| 1981–82 | $115 | $ 90 | $115 |
| 1983–84 | $125 | $ 90 | $125 |

### 2. *Hours Spent on Related Proceedings*

Counsel for BGC also cross-appeals the district court's refusal to include in the lodestar the hours spent in preparing for a National Labor Relations Board (NLRB) proceeding and two temporary restraining orders. The NLRB proceeding involved an unfair labor practice action brought by BGC in which BGC alleged that PECO was giving privileged treatment to another non-majority employee association while refusing to accord similar treatment to BGC. *See Black Grievance Committee v. NLRB*, 749 F.2d 1072 (3d Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 2703, 86 L.Ed.2d 719 (1985). One of the temporary restraining orders involved a decision by PECO not to use two independent union hall workers who had disregarded certain orders. The other temporary restraining order attempted to prohibit PECO from changing its

practices of sending out collectors in pairs. BGC asserted that the NLRB proceeding provided valuable discovery and that the two temporary restraining orders grew out of situations that illustrated PECO's discriminatory practices. The district court carefully considered BGC's arguments and rejected them.

■ A prevailing party in a Title VII or section 1981 suit is entitled to recover attorney's fees for the time "reasonably expended on litigation." *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. In protracted litigations the district court must distinguish between those hours that were related to the issues on which the party prevailed and those hours that were expended on unrelated matters. *See Pennsylvania v. Delaware Valley Citizens' Council for Clear Air*, — U.S. —, 106 S.Ct. 3088, 3096, 92 L.Ed.2d 439 (1986) (prevailing party in action under the Clean Air Act could recover attorneys' fees for time spent monitoring the defendant's performance of a consent decree); *see Webb v. Board of Education of Dyer County*, 471 U.S. 234, 105 S.Ct. 1923, 1928, 85 L.Ed.2d 233 (1985) (prevailing party in section 1983 suit could not recover attorney's fees for time spent pursuing administrative proceedings). The classification the district court makes in this respect is subject to an abuse of discretion standard of review. *See Delaware Valley*, 106 S.Ct. at 3096; *Webb*, 105 S.Ct. at 1929.

■ The NLRB proceeding and the temporary restraining orders were separate matters from the employment discrimination class action. Moreover, neither restraining order was granted. Thus the district court did not abuse its discretion in concluding that these proceedings were not useful or necessary to secure the settlement of the class action. *See Webb*, 105 S.Ct. at 1929. We will therefore affirm the court's refusal to award fees for the hours spent on these matters.

### 3. *The "Result-Obtained" Adjustment*

In *Hensley* the Supreme Court held that "where the plaintiff achieved only limited

success, the district court should award only that amount of fees that is reasonable in relation to the result obtained." 461 U.S. at 440, 103 S.Ct. at 1943. While it is clear that a district court must now consider the result-obtained factor, there is no "precise rule or formula" for evaluating the result obtained and the determination is a matter of district court discretion. *Id.* at 436–37, 103 S.Ct. at 1941. In the present case the district court adjusted BGC's lodestar downward by only 25% because BGC was not completely successful in obtaining the relief it sought.

PECO challenges the district court's result-obtained adjustment on two grounds. First, PECO advocates a mechanical comparison of the claims alleged in one of BGC's pretrial memoranda to the relief obtained in the consent decree. This argument only underscores the need for district court discretion in determining the result-obtained adjustment. As PECO itself admits there is an initial problem in determining what to compare. Here this problem is compounded by the fact that the case was settled rather than fully litigated. Even where claims can be compared to results, however, because the claims do not bear a quantitative relationship to the result, the comparison is subjective. For these reasons the *Hensley* Court expressly rejected a mechanical comparison. *See* 461 U.S. at 435 n. 11, 103 S.Ct. at 1940 n. 11. PECO's first argument concerning the result-obtained factor, therefore, is without merit.

■ Second, PECO argues that the district court erred in adding a 50% "value to the class" factor to its result-obtained adjustment. While it is true that the district court seemed to segregate its analysis by first determining the success factor and then adding a value-to-the-class consideration to come up with an overall result-obtained adjustment, the court's determination is not inconsistent with *Hensley*. In *Hensley* the Court emphasized that it was the overall result of the litigation that mattered. 461 U.S. at 435, 103 S.Ct. at 1940. Because BGC's suit involved a class action the value to the class is certainly an impor-

tant consideration in measuring the overall success. *Cf. City of Riverside,* 106 S.Ct. at 2694–95 (holding that attorneys' fees do not have to be proportionate to the amount of damages a civil rights plaintiff receives because "a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms.") In addition the settlement provided broad-based relief such as hiring goals, training programs, and department reforms that could result in future class benefits. Thus the district court was not really adding a new factor into the *Hensley* result-obtained adjustment, and because the litigation ended in a settlement that provided broad-based relief, the district court did not abuse its discretion in making only a 25% downward adjustment in the lodestar for the result obtained.

### 4. *Contingency Adjustment*

In addition to adjusting the lodestar because of the result-obtained factor, the district court also adjusted the lodestar upward by 50% for the contingent risk faced by BGC's counsel in bringing this lawsuit. This adjustment was designed to compensate BGC's attorneys for the risk that they may have recovered no fees because BGC may not have prevailed in its lawsuit. The Supreme Court has yet to decide whether a contingent risk adjustment is proper. *See Delaware Valley,* 106 S.Ct. at 3100; *see also Blum,* 465 U.S. at 901 n. 17, 104 S.Ct. at 1550 n. 17. This court, however, has held that contingent risk adjustments are permissible. *See Hall v. Borough of Roselle,* 747 F.2d 838, 842–43 (3d Cir.1984); *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 116–17 (3d Cir.1976) (*Lindy II*). Nevertheless, to harmonize this holding with the Supreme Court's decision in *Blum,* where the Court held that the mere recital of adjustment factors was insufficient to justify a lodestar adjustment without actual support from the record, this court has placed the burden of proving the necessity for a contingent adjustment on the plaintiff. *See Hall,* 747 F.2d at 843.

█ BGC's attorneys specifically identified the risks they faced in instituting this litigation. They point out that (1) this case involved a large number of discrete issues, (2) allegations of company-wide racial discrimination are factually and legally difficult to prove, (3) certain legal defense presented open questions of law, and (4) PECO was prepared to provide a strong defense. The district court also pointed out the difficulty BGC faced in demonstrating company-wide racial discrimination through a large number of individual complaints and the risk BGC faced in that the litigation may have proven to be a labor dispute within the exclusive jurisdiction of the National Labor Relations Board rather than a Title VII or section 1981 suit. The district court thus stated that

> the present lawsuit has been as extended, as complex, as expensive and as likely to consume the time of the court, the parties and counsel as any Title VII or other class action ever tried in the United States.

Joint Appendix at 497a. Plaintiffs also knew that they would have to deal with the fact that certain of PECO's most egregious practices had, at least on paper, already been purportedly remedied by the 1973 Consent Decree in *United States v. Philadelphia Electric Co.*, thereby leaving plaintiffs the task of combating the more subtle and difficult-to-prove forms of discrimination. In order to meet this challenge, plaintiffs devised a number of novel approaches, *see supra* part 2 ("Hours spent on related proceedings"). This approach to the case development reflects the difficulty of the case. Thus the court's contingent risk findings are not clearly erroneous. Furthermore, the amount of the multiplier is a matter within the district court's discretion and here the court has not abused that discretion.[3] *See Lindy II*, 540 F.2d at 116. *See also Ursic v. Bethlehem Mines*, 719 F.2d 670, 674–75 (3d Cir.1983).

### 5. *Double Counting*

PECO argues that the district court considered the success factor twice: once in its evaluation of the relief-obtained adjustment and again in its calculation of the contingent-risk adjustment. Thus PECO asserts that the district court committed a legal error by double counting the success factor. After a careful reading of the district court's opinion, we are unable to say with confidence whether or not the relief obtained played any role in his assessment of the contingency adjustment. On remand, the district court should clarify the rationale underlying its .50 contingency adjustment. If the relief obtained played any role in determining that adjustment, it should be reconsidered without reference to the relief obtained.

### 6. *Delayed Payment Adjustment*

The final lodestar adjustment the district court made was a 25% upward adjustment for the delay in payment. The court justified the size of this adjustment by reasoning that "[n]o counsel fees became potentially payable until the consent decree was approved at which point plaintiff could be named the prevailing party. Indeed, no fees became payable until this court rules on the fee petition." *See Black Grievance Committee v. Philadelphia Electric Co.*, 615 F.Supp. 1069, 1077 (E.D.Pa.1985). BGC challenges the size of the court's delayed-payment adjustment, arguing that the court adopted an unduly narrow view of the remedial purpose of the delayed-payment adjustment.

█ Several principles affecting our resolution of this issue are already established. First, recognizing that the payment for attorney services rendered in the past deprives an attorney of the time value of money, the Third Circuit has permitted an adjustment for the delay in payment. *See Institutionalized Juveniles*, 758 F.2d at 922. Second, while the district court is not

---

**3.** PECO's argument that only the risks faced at the time of the filing can be considered must fail given this court's decision in *In re Fine*

*Paper Antitrust Litigation,* 751 F.2d 562 (3d Cir. 1984).

required to award a delay-in-payment adjustment that is equal to the prevailing rate of interest, *id.* at 923, the adjustment should not be limited to the period of time from the fee determination. *See id.* at 923–24. In contrast to a contingent fee arrangement, statutory fees are designed to compensate an attorney as if the plaintiff was a normal fee-paying client. *See* S.Rep. No. 94–1011, 94th Cong., 2d Sess. 6, *reprinted in* 1976 U.S.Code Cong. & Ad. News 5908, 5913. The delay-in-payment adjustment, therefore, is designed to compensate the attorney for the time gap between the actual expenditure of services and the fee award. *See In re Fine Paper,* 751 F.2d at 588. The period following the fee determination, on the other hand, is covered by post-judgment interest provided for in section 1961 of title 28 of the United States Code. *See Institutionalized Juveniles,* 758 F.2d at 927. Although "[t]he decision to award a multiplier for delay in payment and the amount of such a multiplier are determinations within the discretion of the district court," *id.* at 922, the court abused its discretion in this case by not considering the appropriate time period for which the delay-in-payment adjustment is designed to compensate. We will, therefore, remand for a correct analysis.

### 7. *Order of Lodestar Adjustments*

After determining the various lodestar adjustments, the district court added these adjustments together and multiplied the lodestar by that net adjustment. These adjustments—a 25% delay enhancer, a 50% contingency enhancer, and a 25% result-obtained reducer—produced an overall adjustment of 50%, which when multiplied by the lodestar ($283,023.50) yielded an adjusted lodestar of $424,535.25. PECO contends that the district court erred in simply adding the various reducers and enhancers together to obtain a net adjustment.

 Neither the Supreme Court nor this court has adopted a specific method-

ology for applying adjustments to the lodestar. To establish a uniform practice in the Third Circuit, we now hold that a district court should first apply the result-obtained adjustment to the lodestar. Following this adjustment, the court should then add together the other (whether they be reducer or enhancer) adjustments it has found to be justified and multiply that combined factor by the result-obtained-adjusted lodestar. We establish this rule because of the practical desirability of having a uniform methodology. We adopt this particular methodology because the Supreme Court has recently indicated that the result-obtained adjustment is closely related to the lodestar, *see Delaware Valley,* 106 S.Ct. at 3098, and consequently this method is consistent with current Supreme Court pronouncements on lodestar adjustments, *see id.; Blum,* 465 U.S. at 898–901, 104 S.Ct. at 1548–50; *Hensley,* 461 U.S. at 436, 103 S.Ct. at 1941.[4] We, therefore, remand and direct the district court to recalculate the fee award using the lodestar adjustment methodology we have adopted.

### 8 & 9. *Time Spent in Preparing the Fee Petition*

The district court awarded BGC's attorneys $7,672.50 for the time spent in preparing the fee petition. In calculating this award the court reduced the hourly rate of each attorney to a standard $75.00 per hour and treated these hours outside the civil-rights-litigation lodestar. Both PECO and BGC attack this determination. PECO challenges the award because it fails to take account of BGC's lack of success in obtaining the fee petition award it sought. BGC, on the other hand, argues that the court improperly reduced the hourly rate to a standard $75 per hour.

 Like the time spent in litigating the civil rights claim, the time spent in preparing the fee petition is recoverable as a statutorily authorized attorney's fee award. *See Durett v. Cohen,* 790 F.2d 360,

---

**4.** Once the *Hensley* reducer is used, the fee in a partial-success case is the functional equivalent

of the final lodestar in a complete-success case.

363 (3d Cir.1986); *Prandini v. National Tea Co.*, 585 F.2d 47, 54 (3d Cir.1978). The fee petition litigation, however, is "a separate entity subject to lodestar and *Hensley* reduction analysis." *Institutionalized Juveniles*, 758 F.2d at 924. Thus, although the district court still has discretion to determine the compensation for the fee litigation, *id.* at 925, that discretion must be exercised in light of the same considerations that affect the lodestar determination. *See Durett*, 790 F.2d at 363.

■ In the instant fee petition award the district court abused its discretion twice: once in failing to consider the petitioning counsel's success in obtaining the full fee award sought, and a second time in reducing the hourly rate to a standard $75 per hour when PECO filed no affidavit contesting the historical rates or the time spent. We will therefore direct the district court to accept the hourly rates set out in the attorneys' uncontested affidavits and remand so that the district court can reconsider the fee award for work on the fee petition in light of the result-obtained factor and any other factor the court finds to be an appropriate consideration.

### 10. *Expert Witness Fee Expenses*

The final issue that PECO raises in its appeal concerns the district court's award of $13,213.30 in costs for expert witnesses expenses. These expenses were awarded to cover BGC's payments to two industrial psychologists and a certified public accountant. BGC's affidavits state that the industrial psychologists were retained to "review test validation studies previously conducted by PECO ... [and] each [doctor] would have testified concerning improperly validated tests that were then in use by PECO." Joint Appendix at 914. The affidavits also explain that the accountant was hired to give an "opinion at the settlement approval hearing of the steps necessary for PECO to implement the several provisions requiring changes in personnel policies or establishment of new programs as required by the Consent Decree." *Id.* at 915.

PECO contends that we should remand because the district court failed to articulate the reasons justifying its award of actual expenses, which was greater than the standard witness fee allowed for in section 1821 of title 28 of the United States Code. Section 1821 provides a standard per diem fee for the compensation of witnesses who appear in federal court. 28 U.S.C. § 1821 (1982). This court has held, however, that a district court has "equitable discretion" to award expert fees beyond those provided for in section 1821 when the expert's testimony is indispensable to the determination of the case. *See Roberts v. S.S. Kyriakoula D. Lemos*, 651 F.2d 201, 206 (3d Cir.1981) (maritime tort action).

■ In the instant case, the district court failed to make specific findings concerning the indispensability of the experts' testimony to the achievement of the settlement of the employment discrimination class action. We therefore reverse and remand so that the district court can consider the importance of the experts' testimony and make specific findings in light of *Roberts*.

### IV.

For the foregoing reasons, we will vacate the district court's fees and costs awards. On remand the district court is directed to recalculate the lodestar using the uncontested billing rates set out in the attorneys' affidavits, while considering any testimony PECO may offer that these rates were unreasonable. In light of this opinion the court will also have to reconsider and/or recalculate the contingency and delay-in-payment adjustment, the order in which the various adjustments are applied to the lodestar, the fee award for work on the fee petition, and the award for experts' costs. The district court need not, however, reconsider its decision to reduce the lodestar by 25% because of the result-obtained factor. Nor should the court reconsider its decision to exclude from the lodestar the hours spent by BGC's counsel in preparing for

the NLRB proceeding and the two temporary restraining orders.

Each party shall bear its own costs on this appeal, and no fee award shall be considered for work done in connection with this appeal until the district court has recalculated the fees and costs consistent with this opinion. Once the fees and costs for the underlying settlement and fee dispute are established the parties may submit a fee petition for work done on this appeal to the district court. *Cf. Guido v. Schweiker,* 775 F.2d 107 (3d Cir.1985).